UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN YUSKO,

    Plaintiff,

v.                                                                                                   Case No. 12-12564

LIFE TIME FITNESS, INC.,                                      HON. AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (Doc. 35)**

**I. INTRODUCTION**

This is a business dispute. Plaintiff/Counter-Defendant John Yusko (Yusko) sued Defendant/Counter-Plaintiff Life Time Fitness, Inc. (Life Time), a national corporation operating over 100 fitness centers in nineteen states, claiming that Life Time breached two oral contracts relating to Yusko's providing classroom style triathlon coaching and training services at Life Time centers in Michigan. Yusko says he was engaged in a joint venture with Life Time, and that he was to earn 50% of gross profits related to triathlon services offered at Life Time's Michigan locations, and eventually 3% of triathlon services offered by Life Time nationwide. Life Time was granted summary judgment on Yusko's claims, and Yusko's complaint was dismissed. *See* (Doc. 51).

Life Time counterclaimed against Yusko for allegedly breaching a non-compete/non-solicitation agreement and interfering with its potential business. This memorandum and order deals only with the counterclaim. The viable claims in Life Time's counterclaim are:

| | |
|---|---|
| Count I | Breach of Contract – Non-Compete Agreement |
| Count II | Breach of Contract – Non-Solicitation Agreement |
| Count III | Breach of Contract – Use of Confidential Information |
| Count IV | Breach of Contract and Conversion – Failure to Return Information |
| Count V | Tortious Interference with Business Relationships or Expectancies[1] |

Now before the Court is Yusko's motion for summary judgment on the entirety of Life Time's counter-complaint (Doc. 35). The motion was scheduled for oral argument, along with Life Time's motion for summary judgment on Yusko's complaint, for June 11, 2014. At the oral argument, however, the Court heard only on Life Time's motion. The Court deems Yusko's motion appropriate for decision on the papers without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2). For the reasons that follow, Yusko's motion will be granted in part and denied in part.

## II. BACKGROUND

The background is explained in sufficient detail in the Memorandum and Order Granting Defendant's Amended Motion For Summary Judgment (Doc. 38) And Dismissing Plaintiff's Complaint, *see* (Doc. 51), and is not repeated here. The additional facts important to deciding Yusko's motion follow.

In December of 2009, Yusko signed multiple employment forms when he started his relationship with Life Time. Of particular relevance, on December 28, 2009, Yusko signed a "Personal Trainer Confidentiality Agreement & Non-Compete/Non-Solicitation Agreement." (Doc. 38-4). The agreement contained the following relevant provisions:

---

[1] Counts VI–IX alleging trademark infringement and unjust enrichment have been dismissed with prejudice by stipulation of the parties. (Doc. 42).

2. <u>Covenant Not to Solicit the Business of [Life Time] Members, Customers, Clients, and Employees</u>

I agree that during the term of my employment and for a period of twelve (12) months after my termination at [Life Time], Employee [Yusko] will not directly or indirectly, on behalf of myself or any other person or entity:

- a. call upon [Life Time's] members (including those solicited, obtained, serviced and/or maintained by Employee) for the purpose of soliciting and/or providing personal training-related services;
- b. canvas, solicit, or accept any similar or competitive personal training-related business from any customer, member, employee and/or client of [Life Time];
- c. induce customers, members, employees and/or clients to patronize any Competing Business offering or intending to offer personal training; or
- d. request, advise, assist, or in any way facilitate any customer, member, or client of [Life Time] to withdraw, reduce or cancel its business relationship with [Life Time]

3. <u>Covenant Not to Solicit [Life Time] Employees for other Employment</u>

I agree that during the term of my employment and for a period of twelve (12) months after my termination at [Life Time], I will not directly or indirectly, on behalf of myself or any other person or entity:

- a. request, advise, assist, or in any way facilitate any employee or supplier of [Life Time] to withdraw, reduce or cancel its business or employment relationship with [Life Time]; or

- b. induce, solicit, request or advise any of [Life Time]'s employees to accept employment with any Competing Business or otherwise take any action detrimental to the relationships between [Life Time] and its employees

4. <u>Covenant Not to Compete</u>

I agree that during the term of my employment with [Life Time] and for a period of nine (9) months after my termination at [Life Time], I will not, directly or indirectly, on behalf of myself or any other person or entity:

- a. be employed by or serve as an independent contractor

>    or consultant to any Competing Business within the Covered Geographic Area [5 miles]; or
> b. advertise, market, sell, take orders for, or provide personal training-related services for any Competing Business in the Covered Geographic Area.

(Doc. 38-4 at 4–5).

The agreement provides that "[t]he law of the state of Minnesota shall govern the terms, interpretation, and enforcement of th[e] Agreement." (*Id.* at 6).

After his termination from Life Time, Yusko started his own limited liability company—Coach John's JY-Tri Triathlon Coaching and Training, LLC. Using this company, Life Time says that Yusko breached the covenant not to solicit business from Life Time members, the covenant not to solicit Life Time employees, and the covenant not to compete. The specific facts related to what Life Time says amounts to a breach of each of these covenants are explained below.

### III. STANDARD OF REVIEW

The standard for summary judgment is well known and is not repeated in detail. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

### IV. ANALYSIS

Yusko seeks summary judgment on the entirety of Life Time's counter-complaint. Life Time claims that Yusko:

4

(1) breached his non-compete agreement (Count I);

(2) breached his non-solicitation agreement (Count II);

(3) divulged Life Time's confidential information (Count III);

(4) failed to return Life Time's customer and member lists (Count IV); and

(5) tortiously interfered with Life Time's business relationships by contacting its members and customers (Count V).

The Court will address each claim in turn.

**A. Breach of Covenant Not To Compete (Count I)**

Life Time says that Yusko violated the covenant not to compete by starting Coach John's JY-Tri Triathlon Coaching and Training, LLC (Coach John's) within two months of being terminated. Coach John's is headquartered at Yusko's house in Novi within five miles of two Life Time facilities.

Under Minnesota law, courts look upon covenants not to compete "with disfavor and scrutinize them with care." *Freeman v. Duluth Clinic, Inc.*, 334 N.W.2d 626, 630 (Minn. 1983) (citation omitted). As the Supreme Court of Minnesota has explained, the covenant not to compete "must be bargained for and provide the employee with real advantages." *Id.* (citing *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 130–31 (Minn. 1980)). Non-compete agreements must be reasonable. The test for reasonableness is:

> whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

*Softchoice, Inc. v. Schmidt*, 763 N.W.2d 660, 667 (Minn. Ct. App. 2009) (citation omitted).

As explained above, the covenant not to compete precluded Yusko from directly or

5

indirectly competing with Life Time within 9 months of his termination, and within 5 miles of any Life Time location. Yusko does not challenge the validity of the covenant not to compete. However, Yusko argues that he did not violate the covenant for three reasons.

First, Yusko says that he did not engage in a "competing business" as it is defined in the agreement. The agreement defines competing business as "any company, person, or organization other than [Life Time] that is engaged in or may be engaged in the business of providing fitness club-related services." (Doc. 38-4 at 2). The agreement provides a non-exhaustive list of "competing businesses" including health club operators, the YMCA, exercise studios, athletic clubs, country clubs, "the home-use fitness equipment industry," and community centers. (*Id.* at 2–3). The Court is not persuaded by Yusko's argument. At a minimum, there is a question of fact whether Coach John's constitutes a "competing business" under the agreement. Yusko set up Coach John's to continue to engage in the same type of coaching he was engaging in at Life Time—training triathletes. Viewing the evidence in a light most favorable to Life Time, Coach John's is a competing business as defined in the agreement.

Second, Yusko argues that he did not provide "personal training-related services." Yusko admits that he provided some services to others[2]—one-on-one triathlon training, run coaching and assistance with weight loss—but he claims that these services do not constitute "personal training-related services." The agreement does not define "personal training-related services"; however, Yusko states that, because he was involved in group

---

[2] In his motion for summary judgment, Yusko states that he provided run coaching/assistance with weight loss to Christine Hammitt, one-on-one triathlon consultation to Chris Watson and Jim Carabini, and run coaching to Christina Quaine, Liz Straddler, and Brandon Linton.

6

training services at Life Time, offering one-on-one coaching services is not the same. Yusko's distinction is without a difference. His reading of the covenant seeks to narrow the covenant beyond its express terms. Although Yusko was offering group coaching services at Life Time, they were the same type of services he offered on a one-on-one level operating as Coach John's. Given that the agreement does not define "personal training-related services" one way or the other, and that Yusko admittedly provided some coaching services to others, it is for a jury to decide whether the services Yusko provided fall within the meaning of "personal training-related services."

Finally, Yusko states that he did not provide any coaching services within a five mile radius. Yusko contends—and Life Time does not dispute—that Yusko trained people using facilities outside of a five mile radius of any Life Time Club. Yusko's argument, however, misses the mark. The agreement defines "Covered Geographic Area" as "the area within a five (5) mile radius from any place of business owned by or affiliated with [Life Time] that offers or intends to offer personal training." (Doc. 38-4 at 3). Yusko formed a limited liability company—Coach John's—which was headquartered within five miles of two Life Time facilities. Because Coach John's was "within the Covered Geographic Area," it falls within the scope of the covenant not to compete. It does not matter that Yusko trained people in a different location. His limited liability company was within the precluded area, and, presumably, he contacted people from that location (his home).

Accordingly, whether Yusko violated the covenant not to compete is also an issue for a jury to decide.

**B. Breach of Covenant Not to Solicit (Count II)**

As described above, Yusko was prohibited for a period of twelve months after his

termination from soliciting the business of Life Time members, customers, clients and employees. (Doc. 38-4 at 4–5). Count II of Life Time's counter-complaint alleges that Yusko breached the covenant not to solicit by contacting its members and customers "in order to solicit their business away from Life Time to Yusko's own personal training business." (Doc. 7 at 35).

There is sufficient evidence, when viewed in a light most favorable to Life Time, to show that Yusko violated the covenant not to solicit Life Time members, customers and employees.

First, Yusko admitted to providing coaching services to at least one Life Time member, Christine Hammitt (Hammitt), within the twelve month period after his termination. Yusko argues—consistent with his deposition testimony—that Hammitt sought his services, and, therefore, he did not unilaterally solicit business from Life Time members. However, the e-mail correspondence between Hammitt and Yusko is sufficient to require a jury to decide whether Yusko solicited Hammitt. In negotiating a contract with Hammitt, Yusko compared his services to Life Time: "I charged $1600 to $2000 to coach someone to [sic] IronMan...and they pay it.... Life Time charges zero for the run club...and no one shows up.." (Doc. 44-18 at 2). In the same e-mail, Yusko motivated Hammitt, promising her that he could help her lose weight, get in shape and complete an IronMan competition. Whether Hammitt initially contacted Yusko or not, the e-mail correspondence viewed in a light most favorable to Life Time can be interpreted as Yusko soliciting Hammitt.

Second, even if Yusko is correct that there is not sufficient evidence to show that he solicited Hammitt, there is proof in the record that Yusko sought the services of Justin Zatkoff (Zatkoff), a Life Time member, to solicit other Life Time members to train with

Yusko. Yusko provided Zatkoff with an e-mail list of Life Time members who took Yusko's classes while he worked at Life Time, and he directed Zatkoff to e-mail them about Yusko. The e-mail from Yusko to Zatkoff dated March 9, 2012 states:

> Hey Justin,
>
> This email has an attached excel file with the names of all the elite team on one tab and beginners in another.
>
> I have highlighted in red the few elite team that probably should not be involved.
>
> Below are my email lists. . .Same thing I highlighted in red those who probably won't be interested.
>
> In your email. . .something like this might work -
>
> Hey Beginners and Elite. . . .everyone misses communicating with Coach John! We loved his daily emails and his inspiration and motivation. So a group (a big group of us) decided to create a new Facebook site. . . .
>
> something like that.
>
> Thanks – emails are below!
>
> See you [S]unday. . .I will arrive at 10:45 AM or so and start running right at 11:00 or so.
>
> Coach John

(Doc. 44-22 at 2).

Finally, Life Time has proffered evidence that, during the twelve month period, Yusko tried to solicit McElwain while McElwain was employed at Life Time. In an e-mail dated August 28, 2012, Yusko told McElwain:

> Randy. If you are quitting me. Quit. I want you but we don[']t need you anymore. I have stood by you forever...you want both sides. . .time to choose. . .if you want out. . .You are out. . .it will be the biggest mistake you ever made. . .other than deciding no[t] to sue lifetime with me. That is going to cost [you] 100's of thousands. Lifetime acted so illegally it is silly. But a

9

certain point you make a choice , . . . lifetime or me. . .you decide.

* * * *

Bottom line. . . . My business is 100x better with you. . . . But. .if you cannot commit to me 100 percent. . . . .I am better off finding another swim coach that can commit to me.

* * * *

Ps. If you are worried about timing we won't launch until my do not [compete] is over in [N]ovember

(Doc. 44-14 at 2).

Based on the above evidence, a jury may find that Yusko violated his covenant not to solicit Life Time members, customers and employees within twelve months of his termination.

**C. Use of Confidential Information**

    **1. Violation of Confidentiality Agreement (Count III)**

In addition to the above covenants, Yusko agreed "to not directly or indirectly use [confidential business proprietary information (CBPI)] at any time during my employment at [Life Time]." (Doc. 38-4 at 4). Yusko further agreed that, "except as required by my job duties at [Life Time], I will not, directly or indirectly, during my employment at [Life Time] or thereafter, use or disclose CBPI to any person or organization, unless authorized in writing by a person of authority at [Life Time]." (*Id.*). The agreement defines CBPI to include, among other things, "personal information regarding members/clients/customers/employees, including telephone numbers, addresses, other contact information. . . . (*Id.* at 3).

As explained, Life Time says that Yusko breached his agreement by e-mailing

10

Zatkoff member names and e-mail addresses. Yusko, however, argues that he cannot be liable for disclosing member e-mail addresses to Zatkoff because e-mail addresses are not confidential and do not constitute trade secrets. In addition, Yusko says that Life Time did not take steps to keep the e-mail addresses confidential. Yusko's second argument is persuasive.

Under Minnesota law, "it is necessary for the plaintiff to prove that trade secrets in fact existed; that such trade secrets had been acquired by the defendant as a result of a confidential relationship; and that defendant had used and disclosed such secrets." *Eutectic Welding Alloys Corp. v. West*, 160 N.W. 2d 566, 570 (Minn. 1968). The Minnesota Supreme Court has stated that "knowledge gained at an employer's expense, which takes on the characteristics of a trade secret and which would be unfair for the employee to use elsewhere, is deemed confidential and is not to be disclosed or used." *Jostens, Inc. v. Nat'l Computer Sys., Inc.*, 318 N.W.2d 691, 702 (Minn. 1982) (citation omitted). The central inquiry in determining whether material is confidential is whether it has "independent economic value" as a result "of its not being generally known or readily ascertainable by persons who can make use of the information." *Humphrey v. Philip Morris Inc.*, 606 N.W.2d 676, 695 (Minn. Ct. App. 2000) (citations omitted). *See also* Minn. Stat. § 325C.01, Subd. 5. To constitute a trade secret, the protected information must be the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 325C.01, Subd. 5.

Here, as Yusko correctly points out, the list of e-mail addresses was not the subject of reasonable efforts to maintain its secrecy. First, Life Time allowed Yusko—by not saying anything or requiring Yusko to use a Life Time e-mail address—to use his personal

11

"hotmail" e-mail account to e-mail Life Time members involved in triathlon training. Life Time certainly could not expect to keep the e-mail addresses secret by allowing Yusko to access them through his personal e-mail account.

Second, Life Time itself disclosed the e-mail addresses of participants in triathlon classes when sending e-mails to the members as a group without blind copying the participants. *See*, *e.g.*, (Doc. 34-6). By disclosing to all of the members participating in triathlon training the e-mail addresses of other members in the class, Life Time did not reasonably maintain the secrecy of its e-mail list.

Because Life Time did not take appropriate steps to keep the e-mail addresses secret, it cannot prevent Yusko's use of the information, which Yusko has access to in his personal e-mail account.

### 2. Breach of Contract/Conversion (Count IV)

Life Time also says that Yusko is liable for breach of contract and statutory conversion under Mich. Comp. Laws § 600.2919a[3] for possessing Life Time's spreadsheets containing member data and refusing to return them. The basis of this claim is that Yusko used Life Time's confidential business information (the e-mail addresses). As explained, however, the e-mail addresses, in the circumstances of this case, are not confidential business information. Life Time did not take any steps to keep the e-mail addresses secret. Therefore, Yusko is entitled to summary judgment on this claim.

---

[3] Although Minnesota law applies to the claims arising out of the agreement, Michigan law applies to the tort claims in this diversity dispute. *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009).

## D. Tortious interference (Count V)

In Count V, Life Time says that Yusko tortiously interfered with its business relationships or expectancies by contacting its members to solicit their business. As the Michigan Court of Appeals has explained, "[t]he elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach of termination of the relationship or expectancy, and resultant damage to the plaintiff." *BPS Clinical Laboratories v. Blue Cross and Blue Shield of Mich.*, 217 Mich. App. 687, 698–99 (1996) (citation omitted). Here, if a jury finds that Yusko solicited Life Time's members, customers and employees, as explained above, it may find that he intentionally interfered with Life Time's business relationships in order to add value to his Coach John's business. Summary judgment is inappropriate on this claim.

## E. Damages

Finally, Yusko argues that Life Time's counter-complaint should be dismissed in its entirety because Life Time has not demonstrated that it suffered any damages. This has yet to be seen. At a minimum, if a jury finds liability, it may find that Life Time lost revenue from members/customers that were solicited. In addition, if a jury finds that Yusko wrongfully competed with Life Time in violation of his agreement, it may conclude that Life Time lost revenue it otherwise would have earned. To grant summary judgment to Yusko, as described above, would invade the province of the jury.

## V. CONCLUSION

For the reasons stated above, Yusko's motion for summary judgment is GRANTED

IN PART and DENIED IN PART. Particularly, summary judgment is granted to Yusko on Counts III (Breach of Contract – Use of Confidential Information) and IV (Breach of Contract and Conversion – Failure to Return Information). Summary judgment is denied on the remaining breach of contract claims (Count I – Non-Compete Agreement); (Count II – Non-Solicitation Agreement) and the tortious interference claim (Count V).

The case manager will schedule a status conference to chart the future course of the case.

SO ORDERED.

                                      S/Avern Cohn
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE

Dated: July 2, 2014

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 2, 2014, by electronic and/or ordinary mail.

                                      S/Sakne Chami
                                      Case Manager, (313) 234-5160